## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: November 25, 2025

Mr. Benjamin K. Lauderback
Watson Roach Batson & Lauderback
900 S Gay Street
Knoxville, TN 37902

Mr. Terrell L. Tooten
5744 Rayben Circle
Memphis, TN 38115

Re: Case No. 25-5334, *Calvin Dibrell v. Roger Rex, Jr.*
Originating Case No. 3:22-cv-00208

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. LeAnna Wilson

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0547n.06

Case No. 25-5334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 25, 2025
KELLY L. STEPHENS, Clerk

CALVIN LYNDELL DIBRELL,

    Plaintiff-Appellant,

v.

ROGER REX, JR.,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: BATCHELDER, GILMAN, and LARSEN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Police officer Roger Rex, Jr. arrested Calvin Lyndell Dibrell for driving with a suspended Tennessee driver's license and for resisting arrest. Dibrell contends, however, that his license was not lawfully suspended. Although a grand jury later indicted Dibrell on both offenses, the charges were subsequently dropped by the prosecutor. Dibrell then brought suit against Rex, the Alcoa Police Department, and the City of Alcoa (collectively, Defendants), alleging that they had wrongfully arrested and prosecuted him.

The district court granted Defendants' motion to dismiss as to all claims except Dibrell's claim against Rex under 42 U.S.C. § 1983 for malicious prosecution. Following discovery, the court granted summary judgment in favor of Rex on the remaining claim. Dibrell now appeals both rulings. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

# I. BACKGROUND

Rex is a police officer employed by the Alcoa Police Department, which serves the City of Alcoa, Tennessee. On July 9, 2018, Rex responded to a report from employees at the Regions Bank in Alcoa concerning a man acting suspiciously. Although the man left before Rex arrived, Rex obtained enough information to identify him as Dibrell. Rex then conducted a records check, which revealed that Dibrell's driver's license had been suspended since October 30, 2016 for failure to pay court fines and costs.

Two days later, Rex received another report that Dibrell had returned to the Regions Bank. When Rex arrived, Dibrell was sitting in his vehicle parked at the bank, outside of any marked parking spot. Rex approached the vehicle, asked for Dibrell's identification, and inquired why he was parked there. Dibrell answered that he was at the bank to conduct business. Rex then informed Dibrell that his license was suspended. Dibrell responded that he was "waiting on some paperwork to come back from the courthouse to get all that worked out."

Rex, joined by a second officer, Officer Michael Westfield, then ordered Dibrell to step out of his vehicle. When the officers attempted to handcuff Dibrell, he began to resist arrest. The officers repeatedly instructed Dibrell to stop resisting and warned him that Officer Westfield would tase him if he did not comply. When Dibrell continued to resist, Officer Westfield deployed his taser. Additional officers arrived on the scene, and, despite Dibrell's continued resistance, they were eventually able to place him in handcuffs. Dibrell was then transported to the Blount County Jail.

Following the arrest, Rex filed two Affidavits of Complaint against Dibrell in the General Sessions Court of Blount County. The first charged Dibrell with driving on a suspended license, and the second charged Dibrell with resisting arrest. On February 28, 2019, the General Sessions

No. 25-5334, *Dibrell v. Rex*

Court held a preliminary hearing, during which Rex testified that, at the time of his arrest, Dibrell's license was suspended. The judge ultimately found probable cause for both charges and bound the matter over to the grand jury for further proceedings. After hearing the evidence, including Rex's testimony, the grand jury found probable cause to believe that Dibrell had driven with a suspended license and had resisted arrest. It thus indicted him on both charges on April 1, 2019.

In a separate lawsuit, a district court in the Middle District of Tennessee issued a memorandum decision in July of 2018 holding that Tennessee's policy of revoking driver's licenses for failure to timely pay court debts was unconstitutional. *See Thomas v. Haslam*, 329 F. Supp. 3d 475, 491–94 (M.D. Tenn. 2018), *vacated as moot and remanded sub nom. Thomas v. Lee*, 776 F. App'x 910 (6th Cir. 2019). Pursuant to that decision, the Commissioner of the Tennessee Department of Safety and Homeland Security agreed to "continue his cessation of driver's license revocations for nonpayment of court debt" and to "administratively lift all revocations for nonpayment of court debt."

Rex testified during his deposition that at some time after Dibrell's arrest, he learned of this policy change regarding license suspensions for unpaid court debt. But he could not recall when he learned of this policy change or whether he knew of it when he testified before the grand jury.

In January 2022, the charges against Dibrell were dismissed. Dibrell then commenced this lawsuit against Defendants in June 2022, asserting numerous federal and state causes of action. In February 2024, the district court granted Defendants' motion to dismiss as to all claims except Dibrell's § 1983 malicious-prosecution claim against Rex. Thereafter, in March 2025, the court granted summary judgment in favor of Rex on the remaining claim. This timely appeal followed.

No. 25-5334, *Dibrell v. Rex*

## II.  ANALYSIS

### A.  Standard of review

"When considering a motion to dismiss under Rule 12 [of the Federal Rules of Civil Procedure], we review the district court's decision de novo." *Booth Fam. Tr. v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011). "We construe the complaint in the light most favorable to the plaintiff[], accept all of the complaint's factual allegations as true, and decide whether the plaintiff[] can prove any set of facts in support of their claims that would entitle them to relief." *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

"Similarly, we review de novo a grant of summary judgment pursuant to Rule 56." *Booth*, 640 F.3d at 139. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When evaluating a summary judgment motion, the reviewing court must construe the facts in the light most favorable to the non-movant." *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). A party opposing a properly supported summary-judgment motion, however, "may not rest upon mere allegation[s] or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B.  The district court did not err in dismissing the majority of Dibrell's claims

#### 1.  *Fraudulent-misrepresentation and malicious-harassment claims*

We start by considering the district court's dismissal order. Dibrell first contends that Defendants did not move to dismiss, and that the district court's decision failed to address, his claims for fraudulent misrepresentation and malicious harassment. We are not persuaded. Defendants moved to dismiss Dibrell's complaint "in its entirety." And the district court's order

- 4 -

No. 25-5334, *Dibrell v. Rex*

explicitly ruled that "to the extent [Dibrell] intended to" "raise false or fraudulent misrepresentation and malicious harassment claims in his Amended Complaint," "he failed to state a claim."

The district court did not err in so ruling. To state a claim for fraudulent misrepresentation, a plaintiff must allege that

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Metro. Gov't of Nashville & Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)). Dibrell's Amended Complaint does not allege that Defendants made any false representations to him, or that he relied on any such misrepresentations. Indeed, the only misrepresentations that Defendants allegedly made were to third parties, not to Dibrell himself. The Amended Complaint thus fails to state a claim for fraudulent misrepresentation.

Dibrell's malicious-harassment claim fares no better.

> [A] claim of malicious harassment requires not only that a person acted maliciously, i.e., ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person.

*Washington v. Robertson County*, 29 S.W.3d 466, 473 (Tenn. 2000). Dibrell's Amended Complaint does not identify any constitutional right that Defendants prevented him from exercising or enjoying. In fact, its only references to malicious harassment are in paragraphs 17 and 31, which simply assert with no supporting facts that Defendants "maliciously harass[ed]" Dibrell. Such "bare assertion[s]" are not sufficient to state a claim. *See Bell Atl. Corp. v. Twombly*,

- 5 -

No. 25-5334, *Dibrell v. Rex*

550 U.S. 544, 556 (2007). Accordingly, we find no error in the district court's dismissal of Dibrell's fraudulent-misrepresentation and malicious-harassment claims.

### 2. Time-barred claims

Dibrell next challenges the district court's ruling that the statute of limitations bars his claims against Rex under § 1983 for excessive force, false arrest, and false imprisonment, and for negligence, false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress under Tennessee state law. He argues that these claims did not accrue, and the statute of limitations did not begin running, until January 31, 2022, when the charges against him were dismissed.

Dibrell is mistaken. The statute of limitations for Dibrell's § 1983 claims is one year. *See* Tenn. Code Ann. § 28-3-104(a)(1)(B) (imposing a one-year statute of limitations for actions "brought under the federal civil rights statutes"); *see also* 42 U.S.C. § 1988(a) (directing courts to apply state-law statutes of limitations to § 1983 claims). To determine when the statute of limitations begins to run on a § 1983 claim, we look to "what event should have alerted the typical lay person to protect his or her rights." *Beaver St. Invs., LLC v. Summit County*, 65 F.4th 822, 826 (6th Cir. 2023) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

Here, the event that would have alerted Dibrell to his excessive-force claim was the July 11, 2018 arrest in which the excessive force allegedly occurred. *See, e.g.*, *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest."). Dibrell's false-arrest and false-imprisonment claims, on the other hand, accrued once legal process was issued against him—*i.e.*, either when his charges were bound over to the grand jury on

- 6 -

No. 25-5334, *Dibrell v. Rex*

February 28, 2019, or, at the latest, when the grand jury indicted him on April 1, 2019. *See, e.g.*, *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021) (holding that false-arrest and false-imprisonment claims "accrue when the *false* imprisonment ends with the issuance of legal process—when, for example, the plaintiff is brought before a magistrate" (emphasis in original) (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007))). Each of these events occurred more than one year before Dibrell commenced this action on June 8, 2022. And Dibrell cites no authority for his argument that the statute of limitations was somehow tolled until the charges against him were dismissed. Accordingly, these § 1983 claims are untimely.

Dibrell's state-law tort claims are similarly time-barred. Like the § 1983 claims, these tort claims are subject to a one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A) (imposing a one-year statute of limitations for "[a]ctions for . . . injuries to the person [and] false imprisonment"); *see also Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) (explaining that "personal injury tort[s]" are "governed by the general one-year statute of limitations"). The Tennessee Supreme Court has held that "in tort actions, . . . the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975).

Dibrell's claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress are all based on his July 11, 2018 arrest. His injuries therefore occurred and were discovered on that date. Tennessee law is less clear on precisely when Dibrell's state-law false-arrest and false-imprisonment claims accrued. In *Gray v. 26th Jud. Drug Task Force*, No. 02A01-9609-CV-00218, 1997 WL 379141, at *2 (Tenn. Ct. App. July 8, 1997), the Tennessee Court of Appeal held that "claims for false arrest and false imprisonment accrue[] on .

No. 25-5334, *Dibrell v. Rex*

. . . the date of [the] arrest." This would mean that Dibrell's claims accrued on July 11, 2018. In *Lovell v. Warren County*, No. M201900582COAR3CV, 2019 WL 6842380, at *2–3 (Tenn. Ct. App. Dec. 16, 2019), by contrast, the same court ruled that false-imprisonment claims under Tennessee law are subject to the same accrual rules as corresponding claims under § 1983. *See Wallace*, 549 U.S. at 389 (holding that false-arrest and false-imprisonment claims accrue "when legal process was initiated against" the plaintiff). This would mean that Dibrell's claims accrued no later than when he was indicted on April 1, 2019.

We need not decide which case correctly applies Tennessee law because Dibrell's claims are untimely under either rule. Both Dibrell's arrest and his indictment occurred more than one year before he commenced this action. And Dibrell once again fails to support his argument that the statute of limitations was tolled until the charges against him were dismissed.

We note that there is language in *Lovell* suggesting that, contrary to the rule in *Wallace*, the statute of limitations on a Tennessee false-imprisonment claim runs from the date of release of custody. *Contrast Lovell*, 2019 WL 6842380, at *3 ("[W]e hold that a false imprisonment cause of action does not accrue, and the statute of limitations does not begin to run, until the termination of the imprisonment alleged."), *with Wallace*, 549 U.S. at 390 ("[P]etitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected."). But to the extent that *Lovell* accurately reflects Tennessee law, Dibrell's claims are still untimely. Ms. Lovell was held in jail from her arrest until the local district attorney general dismissed the charges against her. *Lovell*, 2019 WL 6842380, at *1. Dibrell, on the other hand, was released on bond by February 2019 at the latest, so his situation implicates none of *Lovell*'s concerns regarding "access to the courts." *Id.* at *3. Consequently, Dibrell's state-law claims, like his § 1983 claims, are untimely.

No. 25-5334, *Dibrell v. Rex*

### 3. Malicious prosecution under Tennessee law

Dibrell also contests the district court's ruling that he failed to state a claim for malicious prosecution under Tennessee law. "To state a claim for malicious prosecution, a plaintiff must show that the defendant (1) instituted a proceeding against him 'without probable cause,' (2) 'with malice,' and (3) that the proceeding 'terminated in the plaintiff's favor.'" *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023) (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012)). The Tennessee Supreme Court has determined that "plaintiffs can pursue a claim for malicious prosecution only if an objective examination, limited to the documents disposing of the proceeding or the applicable procedural rules, indicates the termination of the underlying criminal proceeding reflects on the merits of the case and was due to the innocence of the accused." *Id.* at 743.

The district court correctly observed that Dibrell's Amended Complaint lacks any allegations that the criminal case against him was terminated due to his innocence. Accordingly, the Amended Complaint fails to state a claim for malicious prosecution under Tennessee law. Dibrell nevertheless argues that the court should have inferred that the termination of his criminal case was due to his innocence because he filed motions maintaining his innocence and because the prosecutor dismissed the criminal case with prejudice. But neither of these allegations is present in the Amended Complaint. *See Berry v. United States Dep't of Lab.*, 832 F.3d 627, 637 (6th Cir. 2016) (explaining that "at the motion-to-dismiss stage[,] . . . our review is typically limited to the complaint's allegations").

And even if these facts were alleged, they fail to support an inference that the dismissal was based on Dibrell being innocent of driving with a suspended license and of resisting arrest.

No. 25-5334, *Dibrell v. Rex*

The burden lay with Dibrell to show that the dismissal was based on his innocence, but he failed to do so. *See Mynatt*, 669 S.W.3d at 752 ("[T]here are numerous reasons why a prosecutor might decide to dismiss a case."). The district court thus did not err in dismissing his state-law malicious-prosecution claim.

### 4. Remaining claims

Finally, the district court dismissed Dibrell's claims against Rex under 42 U.S.C. § 1985 and under the Tennessee Human Rights Act, as well as all of his claims against the Alcoa Police Department and the City of Alcoa. Although Dibrell's Opening Brief purports to appeal the court's dismissal order in its entirety, he offers no specific argument as to these claims. Any challenge to their dismissal is therefore forfeited. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) ("[I]n instances where 'issues are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,' we consider them forfeited." (cleaned up) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))).

**C.    The district court did not err in granting summary judgment in favor of Rex on Dibrell's claim for malicious prosecution under 42 U.S.C. § 1983**

We turn next to the district court's grant of summary judgment in favor of Rex on Dibrell's § 1983 malicious-prosecution claim. To prevail on such a claim, a plaintiff must establish that

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alteration in original) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017), *judgment vacated on other grounds*, 583 U.S. 1047

(2018)). Here, the district court held that there is no genuine dispute of material fact regarding whether the state had probable cause to prosecute Dibrell. Dibrell contends otherwise.

We have held that a "grand jury's finding [of probable cause in a criminal proceeding] creates a presumption of probable cause in later proceedings under § 1983." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). Thus, the fact that the grand jury indicted Dibrell presumptively dooms his malicious-prosecution claim. But we have explained that "plaintiffs could defeat the presumption by proving that the defendant knowingly or recklessly made false statements to the grand jury." *Id.* And although witnesses are normally entitled to absolute immunity for their testimony before a grand jury, *see Rehberg v. Paulk*, 566 U.S. 356, 367–70 (2012), Rex cannot claim that defense because he failed to affirmatively plead it, *see Lester*, 986 F.3d at 609 (noting that "absolute immunity must be affirmatively pleaded, or it is forfeited" (quoting *Parnell v. City of Detroit*, 786 F. App'x 43, 47 n.3 (6th Cir. 2019))). Accordingly, the relevant question we must resolve is whether Dibrell has presented sufficient evidence to prove that Rex knowingly or recklessly made false statements to the grand jury.

We conclude that he did not. Dibrell argues that Rex lied when he testified before the grand jury because he knew that Dibrell's license had been unlawfully suspended—meaning he knew that there was no probable cause to prosecute Dibrell for driving on a suspended license or for resisting arrest. But this theory rests on the premise that Rex learned that Dibrell's license was not lawfully suspended prior to the February 2019 preliminary hearing in the Grand Sessions Court and the grand jury proceedings roughly a month later. None of the evidence offered by Dibrell, however, supports this unfounded premise.

Dibrell first points to the Middle District of Tennessee decision that he claims outlawed the suspension of driver's licenses for unpaid court debt. But even if he were correct that this order

- 11 -

No. 25-5334, *Dibrell v. Rex*

rendered the suspension of his license unlawful, it does not show that Rex knew of this fact prior to testifying before the grand jury. Dibrell cites a July 5, 2018 news article to argue that the change in law was reported by the media well before Rex's testimony. Nothing in the record, however, suggests that Rex was ever aware of this reporting. Dibrell's attempt to infer Rex's knowledge from this evidence is thus too speculative to raise a genuine dispute of material fact. *See K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) ("[I]t is well-established in our case law that a party may not avoid summary judgment by resorting to 'speculation, conjecture, or fantasy.'" (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004))).

Dibrell next cites Rex's deposition testimony that he met with the state prosecutor prior to the February 2019 preliminary hearing, and that he learned at some time after Dibrell's arrest that Tennessee had stopped suspending licenses for unpaid court debt. Dibrell contends that this testimony implies that Rex must have been informed of the change in law when he testified before the grand jury in April of 2019. But Rex explicitly stated that he could not recall when he learned of the law being changed. And nothing in the record indicates that Rex ever discussed the change in the law with the state prosecutor during their meeting. Once again, Dibrell relies on speculation and conjecture, which are insufficient to defeat summary judgment. *See id.*

Finally, Dibrell points to objections that were raised when he previously questioned Rex about his knowledge of Tennessee's law being changed. At the preliminary hearing, the General Sessions Court sustained an evidentiary objection to a question by Dibrell's counsel asking whether Rex knew of the change at the time of Dibrell's arrest. And at Rex's deposition, Rex's counsel objected to questions concerning "what went on in [the] grand jury proceeding." Dibrell argues that Rex's knowledge of the law being changed can be inferred from these objections to the questions by Dibrell's counsel. But Dibrell cites no authority—and we are aware of none—

- 12 -

No. 25-5334, *Dibrell v. Rex*

permitting an adverse inference to be drawn from a sustained evidentiary objection. Nor may any adverse inference be drawn from Rex's refusal to disclose confidential information about the grand-jury proceedings because such disclosure is prohibited by Tennessee law. *See* Tenn. Code Ann. § 40-12-209(a)(3) (criminalizing disclosure of "matters occurring before the grand jury"). Accordingly, these objections are not sufficient to raise a genuine dispute of material fact as to Rex's knowledge of the law having been changed prior to his grand-jury testimony.

In sum, Dibrell has failed to present sufficient evidence to establish that Rex "knowingly or recklessly made false statements to the grand jury." *Lester*, 986 F.3d at 608. Dibrell thus cannot overcome the presumption, arising from the fact of his indictment, that the state had probable cause to prosecute him. The district court therefore did not err in granting summary judgment in favor of Rex on Dibrell's malicious-prosecution claim.

This leaves Dibrell's alternative theory of malicious prosecution—that Rex "continued or substantially assisted in the continued prosecution of [Dibrell] after probable cause no longer existed." But the malicious-prosecution theory set forth in Dibrell's Amended Complaint was that Rex "testified against Plaintiff, knowing that Plaintiff did not violate any laws." Dibrell never raised his "continued-prosecution" theory until he filed his opposition to Rex's motion for summary judgment. As the district court correctly observed, "'[i]t is well-settled that a plaintiff may not expand [his] claims' by asserting 'new theories in response to [a defendant's] summary judgment' motion." *See Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013). We accordingly decline to consider this alternative theory now.

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-5334

CALVIN LYNDELL DIBRELL,

   Plaintiff - Appellant,

   v.

ROGER ALLEN REX, JR.,

   Defendant - Appellee.

**FILED**
Nov 25, 2025
KELLY L. STEPHENS, Clerk

Before:  BATCHELDER, GILMAN, and LARSEN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk